UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUDY ELIAS MARTINEZ, | ) | 1:07-CV-00512 OWW JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | DENYING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| BEN CURRY, | ) | |
| | ) | |
| Respondent. | ) | |

Rudy Elias Martinez ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a conviction on May 6, 2004 of assault with force likely to produce great bodily injury or with a deadly weapon (Cal. Penal Code § 245(a)(1)).  (Answer at 1; Pet. at 1). Additionally, the jury found Petitioner committed the offense for the benefit of, at the direction of, and in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1)).  (Answer at 1). The court found that Petitioner had a previous serious felony conviction within the meaning of California Penal Code section 667(a)(1).  Petitioner received an aggregate sentence of eighteen years.  (Id).

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. (*See* Lod. Docs. 1, 2).  The appellate court issued a reasoned opinion on September 1, 2005, affirming Petitioner's conviction.  (*See* Lod. Doc. 5).

1    Petitioner then filed a petition for review to the California Supreme Court, which the court

2    denied on December 14, 2005.  (*See* Lod. Doc. 6).

3    Petitioner subsequently filed a habeas corpus petition with the Tulare County Superior Court,

4    which denied the petition in a reasoned decision on February 26, 2007.  (Lod. Doc. 8).

5    Petitioner filed two petitions for writ of habeas corpus with the California Court of Appeal,

6    which denied the petitions on July 8, 2004 and August 9. 2007.  (Lod. Docs. 9, 13).

7    Petitioner filed two petitions for writs of habeas corpus with the California Supreme Court.

8    The petitions were denied without comment on July 11, 2007 and August 13, 2008. (Lod. Docs. 14,

9    15).

10   On April 4, 2007, Petitioner filed the instant federal petition for writ of habeas corpus.

11   Petitioner filed an amended petition on November 24, 2008.

12   On June 23, 2009, Respondent filed an answer to the petition, to which Petitioner filed a

13   traverse on November 5, 2009.

## FACTUAL BACKGROUND[1]

On November 17, 2003, at about 10:30 p.m., Juan Gutierrez was standing on the front porch of his home on Second Avenue when four men wearing black pants and black jackets approached. One of the men challenged Gutierrez by asking if he was a "Sureno," a gang member. Gutierrez stated he was not. Two of the men attacked Gutierrez, and one of them struck him with a can of beer. Within a few seconds, the other two joined the attack with their fists and feet.

During the attack, one of the assailants hit Gutierrez with a broom handle, with sufficient force that the handle broke. Another struck Gutierrez in the ribs with a wooden two-by-four, 18 to 20 inches in length. While Gutierrez was on the ground, one of the men threw a card table on top of him. Gutierrez was semiconscious after the first blow. He could see his attackers' faces, but did not recall which attacker hit him with which object.

When the attack was over, Gutierrez saw three men walk away. The assailants left behind a full and an empty can of Natural Light beer.

Shortly after the attack, Officer Bill Robertson saw four Hispanic men

---

[1] These facts are derived from the California Court of Appeal's opinion.  (*See* Lod. Doc. 5).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sanders v. Lamarque*, 357 F.3d 943, 948 (9th Cir. 2004).  Here, Petitioner has not presented evidence that would permit the Court to set aside the presumption of correctness that has attached to the State court's factual findings.

U.S. District Court
E. D. California

2

matching the suspects' descriptions walking on Second Avenue. Officer Robinson ordered the men to stop. Appellant complied, but the others ran. One of them, Mario Yado, was captured. When Yado was apprehended, he had a cut above his eye and was carrying a partial 12-pack of Natural Light beer.

Officer Reynaldo Vela handcuffed appellant. The officer did not notice any blood on appellant's hands, clothing, or skin. Appellant did not appear to be injured, and his clothing was not torn or ripped.

Officers Robertson and Vela took appellant and Yado to Gutierrez's home for an in-field identification. Officer Vela admonished Gutierrez that he should be "absolutely positive" before identifying any suspects. Without hesitation, Gutierrez identified both men as being involved in the attack.

At trial, Gutierrez remembered identifying his attackers at a distance of five meters and within a half hour of the attack. He stated that, when he made the identification, it was fresh in his memory. Gutierrez testified that the men were wearing black pants and black jackets during the attack and that, when he identified the subjects later, they were wearing the same clothing. Gutierrez was not able to identify appellant "one hundred percent" at trial, but testified that appellant did resemble one of his assailants.

**Gang Evidence**
Sheriff's Deputy Joe Aguilar testified as a gang expert for the prosecution. Aguilar opined that appellant, who had been identified as a gang member since April of 1998, was currently a member of the Norteno gang. Aguilar based his opinion on appellant's prior contacts with law enforcement, his wearing of gang attire, a photograph of appellant "throwing" a sign, the presence of gang tattoos on his hands and face, and his admission that he was a gang member. Aguilar opined that Yado, who had been identified as a gang member since September of 2000, was also currently a member of the Nortenos. Aguilar based his opinion on Yado's prior contacts with law enforcement, his association with other gang members, his wearing of gang colors, and information from other law enforcement officials. According to Aguilar, the attack against Gutierrez occurred in an area claimed by Norteno gangs.

(Lod. Doc. 5 at 2-4).

## DISCUSSION

**I.     Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. While Petitioner is currently incarcerated at Salinas Valley State Prison in

1  Soledad, California,[2] Petitioner's custody arose from a conviction in the Tulare County Superior
2  Court. (Pet. at 2). As Tulare County falls within this judicial district, 28 U.S.C. § 84(b), the Court
3  has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d)
4  (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where
5  the petitioner is currently in custody or the district court in which a State court convicted and
6  sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.     ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2007 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition since Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'"). As a threshold matter, this Court must "first decide what

---

[2] The city of Soledad falls within Monterey County, which is within the jurisdiction of the Northern District of California. *See* 28 U.S.C. § 84(a).

constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). Furthermore, AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. *Souch v.*

*Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the California Court of Appeal and the California Supreme Court were the only courts to have adjudicated Petitioner's claims. As the California Supreme Court summarily denied Petitioner's claims,[3] the Court looks through those decisions to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.    Review of Petitioner's Claims

The petition for writ of habeas corpus contains six grounds for relief, contending that Petitioner's constitutional rights were violated by: (1) insufficient evidence to support the jury's verdict for assault; (2) the imposition of a sentence enhancement pursuant to California Penal Code section 667(a)(1); (3) ineffective assistance of trial counsel; (4) insufficient evidence to support jury's findings regarding gang enhancement; (5) prosecutorial misconduct; and (6) the trial court's imposition of the upper term.

### A.    Ground One: Sufficiency of Evidence for Assault Conviction

In his first and fourth claims for relief, Petitioner contends that there was insufficient evidence to support the jury's finding that he committed the assault and that the assault had been committed by him for the benefit of, at the direction of, or in association with any criminal street

---

[3] In grounds 3, 4, and 5, neither the California Supreme Court nor the California Court of Appeal issued a reasoned decision. Therefore, the Court must conduct an independent review of the record to determine whether the state court's summary denial was objectively unreasonable. *See Musladin v. Lamarque*, 555 F.3d 830, 835 (9th Cir. 2009).

gang.

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting under AEDPA, a petition for habeas corpus may only be granted where the state court's application of *Jackson v. Virginia*, 443 U.S. 307 (1979) was objectively unreasonable). Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual finding is fairly supported by the record is as follows, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990). Sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n. 16. Furthermore, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). This presumption of correctness applies to a state appellate court's determinations of fact as well as those of a state trial court. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990). Although the presumption of correctness does not apply to a state court's determinations of legal questions or to mixed questions of law and fact, the state court's factual findings underlying those determinations are entitled to the same presumption. *Sumner v. Mata*, 455 U.S. 539, 597 (1981).

Petitioner contends that his conviction for assault with a deadly weapon or with force likely to produce great bodily injury was not supported by sufficient evidence, specifically challenging the reliability of the victim's identification. (Am. Pet. at 5). The California Court of Appeal found that there was substantial evidence upon which a reasonable trier of fact could find Petitioner guilty beyond a reasonable doubt.[4] (Lod. Doc. 5 at 4). The appellate court found that the circumstances of

---

[4] In reviewing sufficiency of evidence claims, California courts expressly follow the standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See People v. Smith*, 37 Cal.4th 733, 738-739 (Cal. 2005); *see also People v. Catlin*, 26 Cal.4th 81, 139 (Cal. 2001). While "the California Court of Appeal decision does not cite to the relevant federal case law in reaching its decision regarding sufficiency of the evidence, such a citation is not required 'so long as neither the reasoning nor the result of the state-court decision contradicts' Supreme Court precedent. [quotation]" *Juan H.*, 408 F.3d at 1275 n. 12 (quoting *Early v. Packer*, 537 U.S. 3, 8(2003) (per curiam)). Thus, the relevant question before a federal habeas court "remains whether the state court in substance made an objectively unreasonable application of the *Jackson* standards for sufficiency of the evidence." *Id*.

the victim's out of court identification was sufficiently probative to support the jury verdict, stating:

> Here, the circumstances surrounding Gutierrez's identification of appellant bolster its probative value. First, Gutierrez testified he was able to see his attackers. He saw the men walk toward him and saw their faces before and during the attack. He was able to describe the clothing the men were wearing. Second, there was no evidence Gutierrez had a motive to falsely implicate appellant. Finally, Gutierrez gave details about the incident to the first officer at the scene who, in turn, broadcast that information, which led to appellant's detention by Officers Robertson and Vela shortly after the incident...
>   Appellant also contends Guiterrez's identification was "not of solid value" because it lacked any corroboration other than improper "guilt by association" circumstances. We disagree.
>   Gutierrez identified appellant as one of his attackers within an hour of the attack. He identified him at close range, from a distance of 15 to 20 feet, and without hesitation. In addition, appellant was apprehended in the vicinity of the attack shortly after the attack occured. Appellant was with three others (victim attacked by group of four), appellant and Yado were Norteno gang members (fight precipitated by question to victim "are you Sureno?"), and Yado was carrying the same type of beer cans found at the scene of the attack and has a fresh cut above his eye, suggesting he had recently been in a fight.

(Lod. Doc. 5 at 5-6).

The Court finds the appellate court's analysis to be a reasonable application of *Jackson* as the victim's in field identification along with the corroborating evidence pointed out by the appellate court was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. *See, e.g., Jones v. Wood*, 207 F.3d 557, 563 (noting that "[a]lthough the evidence was almost entirely circumstantial and relatively weak, it was sufficient to support the conviction"). This is especially true as the appellate court noted that the same challenges that Petitioner now raises regarding the victim's identification was presented to the jury, which convicted Petitioner despite these challenges.[5]

**B.     Ground Two: Sentence Enhancement Pursuant to Section 667(a)(1)**

Petitioner contends that his constitutional rights were violated when the trial judge imposed a five year enhancement upon the finding that the current assault was a serious felony pursuant to California Penal Code section 667(a)(1). In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court overturned a State sentencing scheme as violative of a criminal defendant's right to have a jury verdict based on proof beyond reasonable doubt. The sentencing

---

[5] For a discussion of counsel's cross examination of the victim, see section C *infra*.

scheme permitted a trial judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon a finding by a preponderance of the evidence that the defendant committed the crime with racial animus. *Id*. at 469. The Supreme Court held that the Sixth Amendment right to a jury trial required that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to jury, and proved beyond a reasonable doubt." *Id.* at 490. In *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004), the high court explained that the "statutory maximum" is the maximum sentence a judge may impose based exclusively on the facts reflected in the jury verdict or admitted by the defendant and not the maximum sentence a judge may impose after finding additional facts.

Here, the California Court of Appeal affirmed Petitioner's sentence despite finding that "because the jury convicted appellant of assault with a deadly weapon *or* with force likely to cause great bodily injury, we cannot conclude as a matter of law that the jury determined appellant's conviction qualified under subdivision(c)(8), (23) or (31) of section 1192.7 as a serious felony." (Lod. Doc. 5 at 8). The appellate court found this error was not prejudicial, however, as:

> The jury did find, however, that the assault was committed in association with a criminal street gang. (§§ 245, subd. (a)(1), 186.22, subd.(b)(1).) Recently, the Supreme Court held that "section 1192.7(c)(28) includes within its ambit any felony offense committed for the benefit of a criminal street gang under section 186.22(b)(1) gang sentence enhancement." (*People v. Briceno*, *supra*, 34 Cal.4th at p. 459). In *People v. Bautista*, *supra*, 125 Cal.App.4th at page 657, we applied this holding and concluded that a jury's finding on the section 186.22, subdivision (b)(1) enhancement was '"tantamount to a finding that the [current] offense...was a serious felony pursuant to section 1192.7, subdivision (c)(28).
> In this case, the jury found appellate committed the assault for the benefit of a gang within the meaning of the gang enhancement. Thus, for the same reasons set forth in *Bautista*, we hold that no prejudicial error occurred when the trial court found as a matter of law that the current assault was a serious felony which supported the imposition of the five year enhancement pursuant to section 667, subdivision (a). (*People v. Bautista*, *supra*, 125 Cal.App.4th at p. 657).

(Lod. Doc. 5 at 8-9).

The Court does not find the State court unreasonably applied the prejudice test as it is clear that the error did not have a "substantial and injurious effect or influence in determining" the court's judgment. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). As noted by the appellate court, pursuant to California law, a jury finding that Petitioner violated California Penal Code section 186.22(b)(1) necessitated a finding that the current offense was a serious felony falling pursuant to

section 1192.7(c)(28). Consequently, the error was harmless and Petitioner is not entitled to habeas corpus relief on this ground.

### C. Ground Three: Ineffective Assistance of Counsel

Petitioner contends counsel was ineffective for: (1) failing to object to Detective Aguilar's testimony; (2) failure to thoroughly cross examine the victim; and (3) failure to present two defense witnesses. An allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Additionally, Petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. *Strickland*, 466 U.S. at 687. To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. *Id*.

\\\

\\\

### 1.   *Failure to Object to Perjured Testimony and Inadmissable Conviction Record*

Petitioner contends that the testimony of Detective Joe Aguilar, the prosecution's gang expert, was perjured with regard to the commission of car jackings by Mario Yado and Jesse Reyes. Petitioner argues that counsel was deficient in not objecting to this perjured testimony on the grounds of inadmissable hearsay. The Court finds this argument unpersuasive as an objection on hearsay grounds would not have been meritorious as Detective Aguilar was testifying regarding his expert opinion. *See People v. Gardeley*, 14 Cal.4th 605, 618-619 (1996) (finding that expert could rely on hearsay in reaching his opinion). Thus, trial counsel was not deficient for failing to raise an objection on those grounds.[6]

### 2.   *Cross Examination of Victim*

Petitioner claims counsel was deficient in not thoroughly cross examining the victim on the conditions of the victim's in field identification of Petitioner as one of his attackers. Here, the Court finds Petitioner is unable to meet such a standard as trial counsel was not deficient. Trial counsel's cross examination of the victim revealed that the victim was only shown two people during the in field identification and identified both as his attackers, that the victim suffered blows to the head during the attack and might have been impaired from the injuries when he made the identification, and that the victim was unable to positively identify Petitioner at trial as one of his attackers. ( RT at 49-50). Additionally, as the prosecutor's questioning brought out that the victim may have suffered vision impairment during the attack and/or the identification, it is unclear what other information Petitioner faults trial counsel for not bringing out. (RT at 53).

### 3.   *Failure to Present Defense Witnesses*

Petitioner contends counsel was ineffective for failing to present two witnesses–Mario Yado and Jamie Mendez. Petitioner contends Mr. Mendez would testify that Petitioner was at Mendez's residence for most of the day. To prevail on the second element, Petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors,

---

[6] Petitioner seemingly advances a second argument that counsel should have raised–namely that the evidence was perjured. The Court rejects this grounds for the same reasons it rejects Petitioner's claim regarding prosecutorial misconduct in section e *infra*.

1  the result of the proceeding would have been different. A reasonable probability is a probability
2  sufficient to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting
3  *Strickland*, 466 U.S. at 694).  Here, the testimony that Petitioner was at Mendez's residence for most
4  of the day does not have enough probative value to produce a reasonable probability that the verdict
5  would have been different.  Testimony that Petitioner was at Mendez's residence for most of the day
6  neither diminishes nor contradicts the evidence that Petitioner was spotted immediately after the
7  attack in the vicinity of the incident and with the other attackers and Petitioner was identified half an
8  hour after the attack by the victim as one of the assailants.

9  Petitioner also contends that counsel was deficient in not presenting Mario Yado, his co-
10 defendant, as a witness.  Petitioner claims that statements made by Mr. Yado to Petitioner on the day
11 of the trial suggested that Mr. Yado was willing to testify that Petitioner was not involved in the
12 assault.  The Court notes that Petitioner has not presented any affidavits or other evidence that would
13 support such a claim.  Additionally, the California's rules of court provide that:

> If a person is called as a witness and it appears to the court that the testimony or other evidence being sought may tend to incriminate the witness, the court must advise the witness of the privilege against self-incrimination and of the possible consequences of testifying. The court must also inform the witness of the right to representation by counsel and, if indigent, of the right to have counsel appointed.

17 Cal. R. Ct. 5.548(a).  Given that Mr. Yado was Petitioner's co-defendant, Mr. Yado's testimony that
18 Petitioner was not involved in the attack may have incriminated Mr. Yado.  Thus, even if Mr. Yado
19 had agreed to testify, the trial court would have had a duty to advise him of the privilege against
20 self-incrimination.  It is mere speculation to suggest that given such warnings, Mr. Yado would have
21 still testified.  Thus, Petitioner has failed to established that counsel's performance was prejudicial.

22  **D**.   **Ground Four: Sufficiency of Evidence for Gang Enhancement**

23  In his fourth ground for relief, Petitioner challenges the sufficiency of the evidence pertaining
24 to the imposition of a sentence enhancement.  California Penal Code section 186.22(b)(1) contains a
25 sentence enhancement for those "convicted of a felony committed for the benefit of, at the direction
26 of, or in association with any criminal street gang, with the specific intent to promote, further, or
27 assist in any criminal conduct by gang members."  To establish the sentencing enhancement the State
28 is required to prove that the Norteno street gang was a criminal gang.  *See People v. Williams*, 170

Cal.App.4th 587, 627 (Cal. Ct. App. 2009). This required that the State further prove that the members of the gang engaged in a pattern of criminal gang activity. *Id*. (quoting Cal. Penal Code § 186.22(e) and (f)). A pattern of criminal gang activity means a conviction of at least two offenses enumerated in section 186.22(e)(1)-(33). Additionally, the State was required to provide evidence that the one of the primary activities of the gang was criminal activity. Cal. Penal Code § 186.22(f). Consequently, the Court does not find the appellate court's adjudication of this issue contrary to or an unreasonable application of *Jackson*. A gang's primary activities can be established by evidence that the group's members consistently and repeatedly have committed the enumerated crimes or through expert testimony. *See People v. Sengpadychith*, 26 Cal.4th 316, 323 (Cal. 2001). Here, abstract judgments concerning Petitioner and Mario Yado's carjackings as well as Jesse Reyes' commission of narcotics for sale evidences the primary activity of the gang was criminal activity. (CT at 164-165, 173-179a). Additionally, the gang expert testified that the primary activity of the gang was criminal activity. (RT at 107-108).

The Ninth Circuit has also summarized the elements required for sentence enhancement, stating that:

> To warrant a gang enhancement, California law requires the prosecutor to prove two things. First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang." Cal.Penal Code § 186.22(b)(1). Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Id. We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone. See Garcia v. Carey, 395 F.3d 1099, 1102-03 & n. 5 (9th Cir. 2005).

*Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009).

In *Bricerno*, the Ninth Circuit found that an expert's testimony was by itself insufficient evidence to impose the sentencing enhancement as the expert's testimony could not establish the specific intent requirement. *Id*. This was especially true as the criminal defendant in *Bricerno* had offered proof of a different motivation–namely personal gain. The current case is distinguishable from *Bricerno* as there was evidence outside of the gang expert's testimony that went towards Petitioner's specific intent to promote, further, or assist in criminal conduct by gang members. Specifically, the testimony of the victim that the attack occurred immediately after one of the four

1  attackers asked the victim if he was a member of the rival Sureno gang.  The gang expert testified
2  that the area where the attack occurred was claimed by the Norteno gangs and that by asking the
3  victim if he was a Sureno, the assailants were protecting their turf by kicking out the rival gang
4  member.  (RT at 125-126).  Such evidence is the type of evidence the Ninth Circuit approved of in
5  *Bricerno*, where the court stated that "a jury could reasonably conclude that the defendant committed
6  the crime with the specific intent to benefit the gang, as the defendant either committed the crime to
7  protect gang "turf" or brandished gang signs or a gang moniker during the attack." *Id.* at 1081 (citing
8  *People v. Villalobos*, 145 Cal.App.4th 310 (Cal. Ct. App. 2007) and *People v. Hill*, 142 Cal.App.4th
9  770, 773 (Cal. Ct. App. 2006)).  As sufficient evidence exists, in the form of the abstracts of
10 judgment, the victim's account of the attack, and the gang expert's testimony,  to support the jury's
11 finding regarding the gang enhancement, Petitioner has failed to establish that he is entitled to relief
12 on this ground.

13         **E.      Ground Five: Prosecutorial Misconduct**

14         In his fifth ground for relief, Petitioner contends the prosecutor used perjured testimony and
15 fabricated evidence.  The standard of review for a claim of prosecutorial misconduct raised in a
16 petition for writ of habeas corpus is "the narrow one of due process, and not the broad exercise of
17 supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.*
18 *DeChristoforo*, 416 U.S. 637, 642 (1974)).  "Thus, to succeed, [Petitioner] must demonstrate that it
19 'so infected the trial with unfairness as to make the resulting conviction a denial of due process."
20 *Renderos v. Ryan*, 469 F.3d 788, 799 (9th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 643).  A
21 defendant's due process right is violated where the state does nothing to correct a witness's false
22 testimony.  *See Napue v. Illinois*, 360 U.S. 264, 269 (1959).  However, to prevail on a *Napue* claim,
23 a habeas petitioner must show that "(1) the testimony (or evidence) was actually false, (2) the
24 prosecution knew or should have known that the testimony was actually false, and (3) that the false
25 testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003); *see also*
26 *Schad v. Ryan*, 595 F.3d 907, 916 (9th Cir. 2010).  Under *Napue*, false testimony is material, and
27 therefore prejudicial, if there is "any reasonable likelihood that the false testimony could have
28 affected the judgment of the jury." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc)

(citation omitted).

Petitioner argues that the testimony of Detective Aguilar was perjured and the police report upon which Detective Aguilar used to refresh his memory was fabricated. The Court finds this argument to be without merit. Detective Aguilar testified that Jesse Reyes was involved in a car jacking and a narcotics for sale incident while Mario Yado was convicted of carjacking. (RT at 113-114). An abstract of judgment regarding the possession for narcotics incident by Jesse Reyes and the carjacking by Mario Yado were admitted into evidence. (CT at 173-179a). While no abstract of judgement was entered regarding Jesse Reyes' commission of a carjacking, Petitioner presents no evidence that Detective Aguilar's statement that Jesse Reyes was involved in a carjacking incident was perjured. Additionally, Petitioner has presented no evidence that the prosecutor knew or should have known that Jesse Reyes had not been involved in a carjacking. More importantly, even if the testimony had been false, such testimony was not material as it did not affect the judgment of the jury. California Penal Code section 186.22(e) requires only two predicate offense committed on separate occasions by two or more people to qualify as a pattern of criminal gang activity. The record demonstrates that even without Jesse Reyes' carjacking, there were at least three predicate offenses–a carjacking committed by Petitioner, a carjacking committed by Mr. Yado, and the possession of narcotics for sale by Mr. Reyes. Thus, Petitioner cannot prevail on a claim of prosecutorial misconduct.

### F. Ground Six: Imposition of Upper Term

Petitioner contends that the trial court's imposition of the upper term for the substantive offense of assault violates his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process of the law.[7]

Similar to ground two, Petitioner's argument here is derived from Supreme Court precedent in *Apprendi* and its progeny. The California Court of Appeal denied Petitioner's claim, relying

---

[7] The United States Supreme Court has previously stated that, "the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 246 n. 6) (1999). In *Apprendi v. New Jersey*, 530 U.S. 466, 475 (2000), the Supreme Court recognized that "[t]he Fourteenth Amendment commands the same answer."

1  exclusively on *People v. Black*, 35 Cal.4th 1238 (2005), to reject Petitioner's claim.[8] (Lod. Doc. 5 at
2  12-13). In *Black*, the California Supreme Court held that California's determinative sentencing law
3  satisfied federal constitutional law, stating:

> *Blakely* and *Booker*[*v. Washington*, 543 U.S. 220, 125 S.Ct. 738 (2005)]established a constitutionally significant distinction between a sentencing scheme that permits judges to engage in the type of judicial fact finding typically and traditionally involved in the exercise of judicial discretion employed in selecting a sentence from within the range prescribed for an offense, and a sentencing scheme that assigns to judges the type of fact-finding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense.

*Black*, 35 Cal.4th at 1253. The *Black* court went on to find that "in operation and effect, the provisions of the California determinate sentencing law simply authorize a sentencing court to engage in the type of fact-finding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." *Id.* at 1254. The *Black* court held that the "presumptive" midterm does nothing more than establish a "reasonableness" constraint on an otherwise wholly discretionary sentencing choice akin to that which the United States Supreme Court has deemed constitutional. *Id*. at 1261.

Similar to California's determinate sentencing law, the State sentencing schemes in both *Apprendi* and *Blakely* established an ordinary sentencing range but permitted the trial judge to impose a sentence in excess of that range if the judge determined the existence of specified facts not intrinsic to the crime. In *Blakely*, the United States Supreme Court held that a sentence in excess of the ordinary range was unconstitutional because it was based on facts that were not admitted by defendant or found true by the jury beyond a reasonable doubt. Consequently, in *Cunningham v. California*, 549 U.S. 270, 293 (2007), the United States Supreme Court held that the California Supreme Court's ruling in *Black* was erroneous. The *Cunningham* court noted that the middle term specified in California's statutes was the relevant statutory maximum for the purpose of applying *Blakely* and *Apprendi*. The high court further concluded that the imposition of the upper term based solely upon a trial judge's fact finding violated the defendant's Sixth and Fourteenth Amendment

---

[8] Respondent contends that Petitioner's claim is forfeited as Petitioner failed to object to his sentence. The Court notes the state appellate court denied Petitioner's *Apprendi* claim on the merits. As the state court did not find that Petitioner forfeited his claim, it is not the province of this Court to revisit this issue.

rights because it "assigns to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence." *Id.* at 274.

Based on the foregoing, the California Court of Appeal's decision relying on *Black* is contrary to clearly established federal law in *Apprendi* and *Blakely*. However, this finding does not automatically entitle Petitioner to relief, as the "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws . . . of the United States.'" *Butler v. Curry*, 528 F.3d 624, 633 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3)). To this end, the Court must apply a *de novo* standard of review to determine whether a constitutional violation has occurred. *Id*.

*Apprendi* and its progeny clearly establish that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The prior conviction exception first enunciated in *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998), is a limited exception that does not encompass whether a petitioner was on probation at the time the petitioner committed the crime. *Butler*, 528 F.3d at 641.[9] Here, the trial court imposed the upper term as a result of Petitioner's probationary status, stating, "[t]he Court is imposing the upper term of eight years because the defendant was on parole when this offense was committed and also because of the unprovoked nature of the attack on the victim, who was sitting peacefully at home." (RT at 219). As the *Butler* court found that probationary status at the time of the crime does not fall within the prior conviction exception stated in *Almendarez-Torres* and is thus required to be found by a jury, the trial court's imposition of the upper term based on the court's finding of this fact violated Petitioner's constitutional rights.

\\\

\\\

---

[9]The Ninth Circuit recently recognized that the issue of whether parole/probationary status falls within the prior conviction exception is not clearly established for AEDPA purpose as other courts have disagreed with the Ninth Circuit's decision in *Butler*. *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-679 (9th Cir. 2009). However, the Court notes that *Kessee* is irrelevant as the Court has ruled *supra* that the State court's decision was an unreasonable application of clearly established federal law.

However, the Court finds that Petitioner is not entitled to habeas corpus relief as any sentencing error was harmless. *See Washington v. Recuenco*, 548 U.S. 212, 220 (2006) (sentencing errors are subject to harmless error analysis); *see also Butler*, 528 F.3d at 648. The United States Supreme Court has substantially restricted a state prisoner's entitlement to federal habeas corpus relief by requiring a showing that the violation of a federally guaranteed right had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "Under that standard, we must grant relief if we are in 'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt." *Butler*, 528 F.3d at 648 (citing *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).). "Grave doubt exists when, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Butler*, 528 F.3d at 648 (citing *O'Neal*, 513 U.S. at 435). Furthermore, "the relevant question is not what the trial court *would* have done, but what it legally *could* have done." *Butler*, 528 F.3d at 648-649 (emphasis in original). Under California law only one aggravating factor need to be proven for imposition of the upper term. *See People v. Black*, 41 Cal.4th 799, 806 (Cal. 2007) ("*Black II*"); *Butler*, 528 F.3d at 642-643.

Here, the undisputed evidence would have led the jury to conclude beyond a reasonable doubt that Petitioner was on parole at the time the crime was committed. The probation officer's report, not present in *Butler*, 528 F.3d at 651-652, noted Petitioner was on parole after a conviction on July 19, 1999 for violating California Penal Code section 215 (carjacking). (Probation Rep. at 4). An abstract of the judgement relating to that conviction was also entered into evidence. (CT at 164-165). The report noted that parole for this offense started in July 9, 2002 and that Petitioner has suffered a parole violation in which he was returned to custody on November 18, 2002, before being paroled again on April 10, 2003. The crime was committed on November 17, 2003. The report specifically listed Petitioner's "current active parole status" as a circumstance in its recommendation to the court that Petitioner receive the aggravated term. (Probation Rep. at 7). Thus, the Court finds that trial court's imposition of the upper term based upon the aggravating factor that Petitioner was on parole at the time he committed the crime was harmless as a jury would have found this fact

1  beyond a reasonable doubt.  Accordingly, the Court finds Petitioner is not entitled to habeas corpus
2  relief on this ground.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     May 3, 2010                            /s/ John M. Dixon                    **
UNITED STATES MAGISTRATE JUDGE